KETANJI BROWN JACKSON, United States District Judge
The movants in this subpoena-enforcement matter are fourteen individual plaintiffs *374 who are involved in a complex putative antitrust class action that is being litigated as a multidistrict litigation ("MDL") in the U.S. District Court for the Middle District of Florida ("the Issuing Court"). (See Mem. in Supp. of Mot. to Transfer or Enforce the Subpoena ("Movs.' Mem."), ECF No. 1-1, at 8-9.)[1] In connection with that lawsuit, Movants issued a subpoena duces tecum to Respondent (a third party who is not involved in the underlying MDL) and thereby ordered Respondent to produce certain documents in August of 2016, at a law firm in Washington, DC. (See Subpoena to Produc. Docs., Information, or Objects or to Permit Inspection of Premises in a Civil Action ("Subpoena"), Ex. A to Decl. of Nathaniel C. Giddings ("Giddings Decl."), ECF No. 1-3.) When Respondent refused to comply with the subpoena, Movants filed a motion to enforce the subpoena with the Issuing Court, and both sides then briefed that motion fully. But the Issuing Court eventually decided, per Federal Rule of Civil Procedure 45, that it lacked the authority to rule on Movants' motion to enforce the subpoena, unless Respondent consented. (See Order ("Conditional Denial Order"), MDL ECF No. 384, at 2 (citing Fed. R. Civ. P. 45(d)(2)(B)(i), which states, inter alia , that a party seeking to compel compliance with a subpoena must file its motion in "the district where compliance is required").)[2] Respondent refused to consent to the Issuing Court's exercise of authority over Movants' ripe subpoena-enforcement motion. (See Notice Regarding Pls.' Mot. to Enforce the Subpoena on Dr. Alan Glazier, MDL ECF No. 386; Email of Jan. 19, 2017, Ex. K to Giddings Decl., ECF No. 1-13, at 2); see also Fed. R. Civ. P. 45(f) (permitting the court where compliance is required to transfer to the issuing court a motion to enforce a subpoena "if the person subject to the subpoena consents or if the court finds exceptional circumstances"). As a result, the Issuing Court ultimately denied the motion to enforce without prejudice (see Order, MDL ECF No. 389), which prompted Movants to initiate the instant miscellaneous action in this Court.
Before this Court at present is the first filing in this action: a motion by Movants that requests that this Court transfer their subpoena-enforcement motion to the Issuing Court under Rule 45(f), or in the alternative, enforce the subpoena. (See Mot. to Transfer or Enforce the Subpoena, ECF No. 1.) Pursuant to Rule 45(f), this Court has provided Respondent with another opportunity to consent to the transfer of the subpoena dispute to the Issuing Court (see Min. Order of Mar. 16, 2017), and Respondent, who is proceeding pro se , has once again refused (see Resp. to Pls.' Mot. to Transfer or Enforce the Subpoena ("Resp't's Transfer Opp'n"), ECF No. 8, at 2). Movants maintain that there are exceptional circumstances that warrant transfer under Rule 45(f) in any event (see Movs.' Mem. at 16-17), and for the reasons explained below, this Court agrees. In short, after considering the applicable factors, this Court concludes that transferring the motion to enforce the subpoena to the Issuing Court will avoid disrupting that court's management of the underlying complex MDL, will not burden Respondent, and will ensure that this dispute is handled by the tribunal that is best situated to decide the merits of the subpoena-enforcement issue. Moreover, all of these *375 interests clearly outweigh any interest that Respondent has in having this Court resolve the motion to enforce the subpoena. Consequently, Movants' motion to transfer their motion to enforce the subpoena will be GRANTED , and this matter will be TRANSFERRED to the U.S. District Court for the Middle District of Florida forthwith.
I. LEGAL STANDARDS GOVERNING TRANSFERS OF SUBPOENA DISPUTES UNDER FEDERAL RULE OF CIVIL PROCEDURE 45(f)
The Federal Rules of Civil Procedure contain a clear set of instructions regarding how subpoenas for documents, and also disputes related to such subpoenas, are to be handled. A subpoena to produce materials or to permit inspection "must issue from the court where the action is pending. " Fed. R. Civ. P. 45(a)(2) (emphasis added). But if the recipient of the subpoena objects to production or inspection, the "serving party may move the court for the district where compliance is required for an order compelling production or inspection." Id. at 45(d)(2)(B)(i) (emphasis added). Nevertheless, under Federal Rule of Civil Procedure 45(f) -which first appeared in the Federal Rules in 2013-the court where compliance is required can transfer a subpoena-related motion to compel to the court that issued the subpoena "if the person subject to the subpoena consents or if the court finds exceptional circumstances." Id. at 45(f).
Notably, the term "exceptional circumstances" is not defined in Rule 45(f). However, the Advisory Committee Notes to the 2013 amendments do provide some guidance; they state that, while the "prime concern" when considering transfer "should be avoiding burdens on local nonparties subject to subpoenas," in "some circumstances, ... transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation[.]" Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment. The notes also make clear that "[t]ransfer is appropriate only if such interests outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." Id. And the Advisory Committee further cautions that "the proponent of transfer bears the burden of showing that such circumstances are present[,]" and that "it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." Id.
Thus, courts weighing transfer under Rule 45(f) must carefully balance the "interest of the nonparty in obtaining local resolution of [a subpoena-related] motion" against the interest "in ensuring the efficient, fair and orderly progress of ongoing litigation before the issuing court." Judicial Watch, Inc. v. Valle Del Sol, Inc. , 307 F.R.D. 30, 34 (D.D.C. 2014) (alterations, internal quotation marks, and citation omitted); see also Wultz v. Bank of China, Ltd. , 304 F.R.D. 38, 46 (D.D.C. 2014) ("[C]ourts have found exceptional circumstances warranting transferring subpoena-related motions ... when transferring the matter is in the interests of judicial economy and avoiding inconsistent results." (internal quotation marks and citation omitted) ). To do this, courts typically consider a variety of factors relating to the underlying litigation with the goal of determining if "the issuing court is in a better position to rule on the motion due to [its] familiarity with the full scope of the issues involved as well as any implications the resolution of the motion will have on the underlying litigation." In re UBS Fin. Servs., Inc. of Puerto Rico Sec. Litig. , 113 F.Supp.3d 286, 288 (D.D.C. 2015) (internal quotation marks and citation omitted).
*376 Factors that can support a finding of exceptional circumstances warranting the transfer of a subpoena dispute to the court that issued the subpoena include, inter alia , the "complexity [of the underlying matter], [its] procedural posture, [the] duration of pendency [of the underlying case], and the nature of the issues pending before, or already resolved by, the issuing court in the underlying litigation." Id. (internal quotation marks and citation omitted).
II. ANALYSIS
As explained above, courts where compliance with a subpoena is required (such as this Court) consider various factors to evaluate whether there are exceptional circumstances that warrant transferring a subpoena dispute to the court that issued the subpoena under Rule 45(f). At bottom, the established considerations appear to relate to three overarching questions: (1) whether the underlying litigation will be disrupted if the subpoena dispute is not transferred; (2) whether the nonparty subpoena recipient will suffer undue burden or cost if the subpoena dispute is transferred; and (3) whether, based on various considerations, the issuing court is in the best position to rule on the motion to compel. This Court has undertaken to answer these questions with respect to the motion to enforce the subpoena at issue here in light of established factors, and because (1) the risk of disruption to the underlying MDL if this Court rules on the motion to enforce is substantial, (2) the interest in avoiding that disruption plainly outweighs the negligible burden to Respondent that transfer poses, and (3) the Issuing Court is best positioned to address the merits of Movants' motion to enforce, as explained below, the Court finds that exceptional circumstances exist for the purpose of Rule 45(f).
A. Resolution Of The Subpoena Dispute By This Court Risks Disruption Of The Underlying Multidistrict Litigation
As mentioned above, Movants are the plaintiffs in a complex putative class action that is currently ongoing in the Middle District of Florida. (See Movs.' Mem. at 8.) The complaint in that action alleges that various manufacturers of disposable contact lenses-including Alcon Laboratories, Inc., Johnson & Johnson Vision Care, Inc., Bausch & Lomb Inc., and CooperVision, Inc.-and a wholesaler, ABB Concise Optical Group, LLC (collectively, "the MDL Defendants"), have violated multiple federal and state antitrust and consumer protection laws. (See id. ) Movants specifically allege that the MDL Defendants conspired amongst themselves and with others to impose minimum resale prices on contact lens lines by subjecting them to unilateral pricing policies, that, in turn, reduced or eliminated price competition by preventing retailers from discounting those products. (See id. ) The putative class includes all persons and entities in the United States who, from June 1, 2013 to the present, made a retail purchase of any of the four manufacturer MDL Defendants' disposable contact lenses if the purchase was subject to an aforementioned unilateral pricing policy. (See Pls.' Corrected Consol. Class Action Compl., MDL ECF No. 135, at 4.)
As relevant here, since June of 2015, more than 50 separate actions have been consolidated as an MDL in the Issuing Court for management of all pretrial proceedings and discovery. (See Conditional Transfer Order, MDL ECF No. 102.) The consolidated actions have generated a lengthy docket of pretrial proceedings over the past two years, and among those proceedings is the instant subpoena dispute, which commenced on July 22, 2016. (See *377 Movs.' Mem. at 9-10.) On that date, Movants invoked the authority of the Issuing Court to issue a subpoena to Respondent, an optometrist in Maryland who administers a social media page called "ODs on Facebook" that purportedly contains, inter alia , communications between various independent eye care professionals (i.e., optometrists and ophthalmologists) and the MDL Defendants. (Id. ) Movants' subpoena required Respondent to produce records of those communications, records of other specified communications between Respondent and the MDL Defendants or between Respondent and independent eye care professionals, and any documents showing payments from the MDL Defendants to Respondent related to his operation of the ODs on Facebook page, among other things. (See Subpoena at 12-13.)
Respondent balked at parts of this subpoena (see Ans. to Subpoena, Ex. B to Giddings Decl., ECF No. 1-4), and Movants then sought the assistance of the Issuing Court in enforcing the production mandate (see Pls.' Mot. to Enforce the Subpoena, MDL ECF No. 318). Under these circumstances, seeking the Issuing Court's assistance with enforcement of the subpoena-as opposed to filing a motion to compel in the district where compliance was sought (i.e., this district)-was a logical step, because the disputed subpoena pertained to complex pretrial proceedings that had already been consolidated in the Issuing Court as an MDL. Indeed, in this Court's view, the fact that the underlying action is an MDL that the Issuing Court has been tasked with overseeing precisely because a single tribunal needs to adjudicate all discovery issues and other pretrial matters for the sake of consistency and efficiency is an exceptional circumstance that weighs heavily in favor of transfer. See 28 U.S.C. § 1407 (establishing the mechanism by which the United States Judicial Panel on Multidistrict Litigation ("the MDL Panel") can consolidate cases that share common factual issues before a single district judge for pretrial proceedings).
Under section 1407 of Title 28 of the United States Code, "coordinated or consolidated pretrial proceedings shall be conducted by a judge or judges to whom [an MDL is] assigned[,]" and "[t]he judge or judges to whom such actions are assigned ... may exercise the powers of a district judge in any district for the purpose of conducting pretrial depositions in such coordinated or consolidated pretrial proceedings." 28 U.S.C § 1407(b) (emphasis added).[3] The MDL consolidation process effectively "avoid[s] or minimize[s]" the "possibility for conflict and duplication in discovery and other pretrial procedures in related cases[,]" In re Corrugated Container Antitrust Litig. , 662 F.2d 875, 880 (D.C. Cir. 1981) (internal quotation marks and citation omitted), and the entire point of the MDL mechanism is to "allow[ ] one judge to take control of complex proceedings." In re Subpoenas Served on Wilmer, Cutler & Pickering and Goodwin Proctor LLP , 255 F.Supp.2d 1, 2 (D.D.C. 2003) (internal quotation marks and citation omitted). In other words, it is clear beyond cavil that, "[i]n enacting § 1407, Congress intended to provide centralized management of pretrial proceedings and to ensure their just and efficient conduct." Pogue , 238 F.Supp.2d at 273 (emphasis added) (internal quotation marks and citation *378 omitted); see also id. at 275 ("[T]he purpose and policy of [a] multidistrict litigation ... is to provide for a unified concept of pretrial proceedings." (internal quotation marks and citation omitted) ).
Based on these compelling interests, courts in this district, the Issuing Court's district, and elsewhere have held that the transferee judge who manages an MDL has jurisdiction under section 1407 (i.e., the statute authorizing MDL proceedings) to enforce a subpoena that requires compliance in another district, despite the procedural requirements of Rule 45. See, e.g. , U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc. , 444 F.3d 462, 468-69 (6th Cir. 2006) ("A judge presiding over an MDL ... can compel production by an extra-district nonparty [and] enforce, modify, or quash a subpoena directed to an extra-district nonparty[.]"); In re Photochromic Lens Antitrust Litig. , No. 8:10-md-2173-T-27, 2012 WL 12904391, at *2 (M.D. Fla. Dec. 20, 2012) (collecting cases and concluding that, "[i]n keeping with the efficiency goals of the MDL statute, courts have concluded that an MDL judge's authority extends to overseeing subpoenas for documents"); In re Subpoenas Served on Wilmer, Cutler & Pickering , 255 F.Supp.2d at 2-3 (weighing the competing provisions of Rule 45 and section 1407 and determining that, under section 1407, the authority to rule on the motion to quash a subpoena belonged to the judge overseeing the underlying MDL).
And under the express terms of Rule 45(f), one need not even go that far: that is, even assuming arguendo that the ordinary requirement that a motion to compel must be filed in the district where compliance is required "is applicable in multidistrict litigation[,]" as the Issuing Court found here (Conditional Denial Order at 2 n.2 (citing In re ClassicStar Mare Lease Litig. , Nos. 5:07-cv-353, 5:06-cv-243, 2017 WL 27455, at *1 n.4 (E.D. Ky. Jan. 3, 2017) (collecting MDL cases discussing interplay between Rule 45 and section 1407 ) ) ), the MDL status of the underlying litigation is surely an "exceptional circumstance" that weighs strongly in favor of transfer to the Issuing Court under Rule 45(f), because the same concerns about orderliness and disruption that led to the consolidation of actions as an MDL in the first place arise with respect to pretrial disputes regarding subpoenas issued in the context of that complex litigation. In fact, when faced with a nonparty's motion to quash a subpoena that was issued in connection with the very same MDL that is the underlying action here, the Western District of Texas recently transferred the motion to quash to the Issuing Court under Rule 45(f), saying that it was doing so to "foster the interests of fairness, consistency, judicial economy, and speed of resolution[,]" and because it was "critical" that the Issuing Court ensure "[u]niformity of discovery rulings" when managing the "complicated [underlying] multidistrict litigation[.]" Visionworks of Am., Inc. v. Johnson & Johnson Vision Care, Inc. , No. 1:17-mc-0055, 2017 WL 1611915, at *2 (W.D. Tex. Apr. 27, 2017) ; see also In re Niaspan Antitrust Litig. , No. 15-1208, 2015 WL 3407543, at *1 (D. Md. May 26, 2015) ("[W]here the underlying action is a multidistrict litigation, transfer may be warranted to avoid piecemeal rulings by different judges, reaching different conclusions, in resolving identical disputes.").
It is clear from the record in this case that the district judge and magistrate judge who are presiding over the underlying multidistrict antitrust proceedings have managed those proceedings in a centralized fashion, thereby attempting to avoid duplicative or unnecessary discovery and the risk of piecemeal or inconsistent rulings regarding pretrial matters. Furthermore, with respect to discovery proceedings *379 in particular, the Issuing Court "has already supervised substantial discovery"-which is a factor that weighs in favor of transfer under Rule 45(f). XY, LLC v. Trans Ova Genetics, L.C. , 307 F.R.D. 10, 12 (D.D.C. 2014). For example, the Issuing Court has issued comprehensive case management orders that have defined the scope of permissible discovery, and has set detailed pretrial schedules for discovery, dispositive motions, and class certification. (See, e.g. , Case Mgmt. and Scheduling Order, MDL ECF No. 204; Order ("Rev. Sched. Order"), MDL ECF No. 361). The Issuing Court also continues to hold regular discovery conferences (see, e.g. , Notice Setting Regular Telephonic Disc. Status Conferences, MDL ECF No. 247; id. , MDL ECF No. 377); has already ruled on numerous discovery disputes (see, e.g. , Order, MDL ECF No. 264; Order, MDL ECF No. 349; Order, MDL ECF No. 375; Order, MDL ECF No. 466); and is currently overseeing several other outstanding issues related to discovery (see, e.g. , Pls.' Mot. to Compel, MDL ECF No. 460).
Thus, it is clear to this Court that transferring this matter to the Issuing Court would avoid disruption of the carefully planned and time-sensitive discovery rulings that the Issuing Court has already made. (See, e.g. , Rev. Sched. Order at 4 (setting, inter alia , a fact discovery closing date of August 4, 2017) ); see also Duck v. U.S. S.E.C. , 317 F.R.D. 321, 325 (D.D.C. 2016) (noting that transfer "is appropriate where [it] would avoid interference with a time-sensitive discovery schedule issued in the underlying action"); Fed. Home Loan Mortg. Corp. v. Deloitte & Touche LLP , 309 F.R.D. 41, 43-44 (D.D.C. 2015) (concluding that "transfer is appropriate to avoid disrupting" the management of the underlying litigation "[i]n light of the short discovery window and the complexity of the issues raised by the [subpoena-related motion]"). Moreover, transfer would also avoid interference with the Issuing Court's disposition of Movants' motion for class certification-a motion that is currently pending in the underlying MDL. (See Pls.' Mot. for Class Cert., MDL ECF No. 396; Order, MDL ECF No. 430 (ordering the MDL Defendants to respond to the class certification motion on or before June 2, 2017) ); see also In re UBS Fin. Servs. , 113 F.Supp.3d at 288 (recognizing, when evaluating transfer, that "class certification remains pending, and [the underlying court's] ruling on that issue may impact the scope of discovery").
This all means that transferring the subpoena dispute to the Issuing Court quite clearly promotes Rule 45(f)'s interests in avoiding disruption of the underlying litigation, which is a carefully managed, complex MDL that has been treated as such in order to ensure efficient, fair, and orderly judicial proceedings.
B. Transferring The Subpoena Will Not Unduly Burden Respondent
Respondent maintains that transferring this subpoena dispute to the Issuing Court would be burdensome to him because he is not a party to the underlying MDL, has no connection to the state of Florida (where the MDL is being litigated), and lives and works in Maryland. (See Resp't's Transfer Opp'n at 2.) But Respondent fails to show-and this Court cannot discern-how a transfer would impose any burden on Respondent at all.
First of all, the merits of the subpoena issue have already been fully briefed-twice -and because Movants and Respondent have already submitted a full set of briefs on the subpoena issues in the Florida court, litigating the motion to enforce the subpoena in the Issuing Court "will require few, if any, modifications of the *380 written submissions[.]" Wultz , 304 F.R.D. at 45.[4] Therefore, transferring this case (which would effectively only require Respondent to refile an opposition brief that he has already submitted) "does not rise to the level of unfair prejudice" to Respondent. Id.
It is also highly unlikely that Respondent will have to travel to Florida to litigate enforcement of the subpoena following transfer. The Issuing Court has already held two telephonic hearings in connection with this dispute (see supra n.4), so it is doubtful that court will require additional hearings. Even more telling is the fact that the Issuing Court did not require Respondent to travel to conduct those earlier conferences; this makes it even more unlikely that any additional hearings that court might call would require in-person appearances. What is more, the accommodation of appearance by telephone was specifically authorized in the Advisory Committee Notes regarding transfer under Rule 45(f), and there is no reason to believe that the Issuing Court would mandate anything more. See Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment (encouraging issuing courts to whom subpoena disputes are transferred to "permit telecommunications methods to minimize the burden a transfer imposes on nonparties"); see also Google, Inc. v. Dig. Citizens All. , No. 15-00707, 2015 WL 4930979, at *4 (D.D.C. July 31, 2015) ("[T]he encouragement of utilizing telecommunications as an alternative to travel is adequate to avoid undue burden on the nonparties in this context.").
It is also clear to this Court that the ultimate enforcement of the subpoena by the Issuing Court if Respondent loses on the merits would impose no greater burden on Respondent than would enforcement by this Court. Respondent's obligations to comply would appear to be identical regardless of which court actually enforced the subpoena; the Court discerns no reason "why the burden of reviewing, assembling, and producing documents is any different depending on which court issues an order for [Respondent] to do so[,]" Agincourt Gaming, LLC v. Zynga, Inc. , No. 2:14-cv-0708, 2014 WL 4079555, at *8 (D. Nev. Aug. 15, 2014), and Respondent points to none. And even if some additional administrative burden would be imposed, it would no doubt be "mitigate[d]" because the documents addressed in the subpoena can be produced electronically, Judicial Watch , 307 F.R.D. at 34, and in any event, Movants have proposed *381 having a forensic discovery expert perform the document search and collection directly, at Movants' expense (see Movs.' Mem. at 29-30; Movs.' Reply at 5 n.6 ("Movants anticipate the requested third-party discovery expert would be able to do an on-site collection at [Respondent's] office and/or a remote collection via the internet.") ). Thus, Respondent is not in danger of somehow having to comply with the subpoena by conducting the search, review, and document production in Florida.
Notably, while transferring the enforcement motion to the Issuing Court imposes little if any additional burden on Respondent, there would be an additional burden on both parties if this Court were to keep and resolve this case. That is because, in order for this Court to be able to address the merits of the motion to enforce the subpoena effectively, the parties might well be required to, inter alia , submit supplemental briefing that addresses existing gaps in this Court's understanding of the underlying MDL; and/or negotiate and seek a protective order that permits the filing of unredacted and/or sealed versions of filings already provided to the Issuing Court; and/or appear at a hearing to present their arguments directly to this Court. Thus, on balance, both Movants and Respondent would have to bear a more substantial burden if this Court were to undertake to decide the instant subpoena dispute than if Movants' motion to enforce were transferred to the Issuing Court.
C. The Issuing Court Is Best Situated To Decide Whether The Subpoena Should Be Enforced
Finally, because this Court agrees with the Issuing Court's characterization of the underlying MDL as "not the ordinary case or the potential ordinary class action[,]" but rather "a highly complex case and potentially a class action asserting nationwide antitrust claims against five large corporate defendants" (Rev. Sched. Order at 2), it has no doubt that the Issuing Court is the more appropriate tribunal to address the merits of the instant subpoena dispute. Notably, the MDL Panel apparently believed that the Issuing Court is particularly qualified to manage and conduct the pretrial proceedings and discovery in this complicated putative class action brought under federal and state antitrust and consumer protection laws because it consolidated all of the various related actions in that court, and specifically noted that Judge Harvey Schlesinger was selected as the transferee judge because he is "a jurist who is familiar with the contact lens industry by virtue of his experience presiding over a previous MDL involving allegations of anticompetitive conduct in that industry." (Transfer Order, MDL ECF No. 1, at 2.)
The subpoena dispute centers on several points of contention that implicate the underlying MDL and would benefit from the application of Judge Schlesinger's and Magistrate Judge James Klindt's expertise. For example, Movants and Respondent dispute whether the subpoenaed documents are even relevant to the claims that Movants make in the underlying MDL. (Compare Movs.' Mem. at 17 (claiming the subpoenaed materials are "crucial to their case"), with Resp't's Enforcement Opp'n at 6 ("[Movants] are not allowed to go on a fishing expedition; rather, they have to show the posts they seek are material and relevant.").) Therefore, ruling on the enforceability of the subpoena would require an assessment of the relevance of the documents at issue to the complex claims being litigated in the underlying MDL; yet, this Court has "limited exposure to and understanding of the primary action." Flanagan v. Wyndham Int'l Inc. , 231 F.R.D. 98, 103 (D.D.C. 2005) (citations omitted). By contrast, the judges who are *382 presiding over the MDL are already "knee-deep in the nuances of the underlying litigation," and thus are clearly "in a much better position than this Court to evaluate relevance." Flynn v. FCA US LLC , 216 F.Supp.3d 44, 47 (D.D.C. 2016) (citation omitted); see also XY, 307 F.R.D. at 12 ("[T]he relevance argument advanced [by the subpoenaed nonparty] emphasizes the need for the court where the underlying matter lies to decide the matter." (internal quotation marks and citation omitted) ).
Another point of contention between the parties here is whether the protective order that has been issued in the underlying MDL (see Stip. Conf. Order ("Confidentiality Order"), MDL ECF No. 226) is sufficient to mitigate the privacy concerns Respondent has asserted in his challenge to the subpoena (compare Movs.' Mem. at 21 ("[A]ny privacy concerns are adequately addressed by the [Confidentiality] Order."), with Resp't's Enforcement Opp'n at 6-7 (arguing that producing the material, even under the Confidentiality Order, may expose Respondent to harm) ). The Confidentiality Order is 22 pages long, contains specific provisions concerning discovery directed to nonparties (see Confidentiality Order at 19-20), and has already been the subject of at least one dispute concerning its proper interpretation and enforceability, which the Issuing Court previously resolved (see Order, MDL ECF No. 346). Therefore, the Issuing Court is not only familiar with the parties in the underlying MDL generally, but it has also already assessed the applicability, scope, and sufficiency of the Confidentiality Order, and is therefore in a much better position than this Court to make a determination regarding whether any of Respondent's privacy concerns are warranted. See Visionworks of Am., Inc. , 2017 WL 1611915, at *2 ("[T]he evaluation of the efficacy of the [issuing court's] confidentiality order in protecting [the subpoenaed nonparty's] interests is best made by that court and not this one."); see also Flynn , 216 F.Supp.3d at 48 ("Because the issuing court has been able to intimately observe the parties and counsel involved in the underlying litigation over the course of the past 15 months, it is much better positioned than this Court to determine whether any of [the subpoenaed nonparty's] fears about the inappropriate dissemination of confidential information in violation of a protective order have any merit.").
It is also possible-and perhaps even likely-that the arguments raised by Movants and Respondent in the context of the instant subpoena dispute implicate some of the same issues that the Issuing Court has already addressed in its numerous prior orders in the underlying MDL (see, e.g. , Order, MDL ECF No. 242 (denying a motion by a purported class representative to file an amended complaint); Order, MDL ECF No. 243 (granting in part and denying in part a motion to dismiss an amended complaint); Order, MDL ECF No. 346 (interpreting the scope of the Confidentiality Order); see also Orders, MDL ECF Nos. 264, 349, 375, 466 (ruling on motions to compel production and/or motions for a protective order) ), or issues that the Issuing Court is currently considering in connection with several outstanding discovery disputes (see, e.g. , Pls.' Mot. to Compel, MDL ECF No. 460). If nothing else, then, because the Issuing Court has already "issued a multitude of orders resolving significant procedural and discovery disputes[,]" and has done so over a period of nearly two years now, it is plainly "in a better, more informed position" than the instant Court to rule on enforcement of the subpoena at issue here. In re UBS Fin. Servs. , 113 F.Supp.3d at 288 ; see also , e.g. , Duck , 317 F.R.D. at 325 (finding that the issuing court was "especially well-situated *383 to rule on [the] [m]otion to [c]ompel" in part because the district judge and magistrate judge had "significant involvement" in the underlying case for several years); Judicial Watch , 307 F.R.D. at 35, 37 (finding, where the underlying case had been pending for years and had involved numerous discovery disputes, that exceptional circumstances warranting transfer existed).
III. ORDER
As explained above, the factors that weigh in favor of transferring this subpoena dispute to the Issuing Court are abundant. In sum, this Court finds that transferring the motion to enforce the subpoena to the Issuing Court will prevent disruption of the myriad rulings that court has already made with respect to the complex underlying MDL, thereby avoiding inconsistent rulings, and will also promote judicial economy by permitting the federal tribunal that is best situated to resolve the instant discovery dispute to handle the subpoena-enforcement matter. Furthermore, in this Court's view, those significant considerations far outweigh the minimal burden, if any, that transferring the motion will impose on Respondent. Thus, this Court easily concludes that exceptional circumstances exist to transfer enforcement of the subpoena to the Issuing Court, pursuant to Federal Rule of Civil Procedure 45(f).
Accordingly, it is hereby
ORDERED that Movants' motion to transfer to the Issuing Court their motion to enforce the subpoena is GRANTED , and it is
FURTHER ORDERED that this matter is TRANSFERRED to the U.S. District Court for the Middle District of Florida, where the underlying multidistrict litigation is pending. The Clerk of this Court is directed to transfer this case forthwith.[5]

Page-number citations to the documents the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

All record citations to the underlying MDL pending before the Issuing Court are designated as "MDL ECF No."

Numerous courts have explained that the authority granted in section 1407 to conduct "pretrial depositions" encompasses the power to act as a judge in any district for purposes of other discovery matters as well, including, inter alia , enforcing subpoenas to produce documents. See, e.g. , U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc. , 238 F.Supp.2d 270, 273-75 (D.D.C. 2002).

The procedural history of the briefing of the subpoena-enforcement dispute is as follows. Movants first filed a motion asking the Issuing Court to enforce the subpoena on September 14, 2016. (See Pls.' Mot. to Enforce the Subpoena, MDL ECF No. 318.) Respondent opposed that motion on September 27, 2016 (see Resp. to Pl. [sic ] Arg. for Subpoenaed Info., MDL ECF No. 324); Movants filed their reply on November 30, 2016 (see Pls.' Reply in Supp. of Mot. to Enforce the Subpoena, MDL ECF No. 367); and Respondent filed a sur-reply on December 5, 2016 (see Sur-Reply, MDL ECF No. S-374). The parties also presented arguments to the Issuing Court during two telephone conferences: one on August 31, 2016 (see Tr. of Aug. 31, 2016 Disc. Status Hr'g, MDL ECF No. 302, at 11-21), and the other on November 16, 2016 (see Telephonic Hr'g re Pls.' Mot. to Enforce the Subpoena, MDL ECF No. 359). It was only after this full round of briefing and argument that the Issuing Court decided that it was without jurisdiction to proceed to address the motion to enforce under the Federal Rules. The parties then briefed the subpoena-enforcement issues again , this time in the context of the instant motion to transfer or enforce. (See Movs.' Mem.; Resp't's Transfer Opp'n; Resp. to Pl. [sic ] Arg. for Subpoenaed Info. ("Resp't's Enforcement Opp'n"), ECF No. 9; Movs.' Reply Mem. in Supp. of Mot. to Transfer or Enforce the Subpoena ("Movs.' Reply"), ECF No. 10.)

Although the Advisory Committee Notes regarding the 2013 amendments to Rule 45 suggest that "[j]udges in compliance districts may find it helpful to consult with the judge in the issuing court presiding over the underlying case" when deciding whether transfer is appropriate, Fed. R. Civ. P. 45(f) advisory committee's note to 2013 amendment, this Court finds it unnecessary to do so under the unusual circumstances presented here. Far from needing notice and/or consultation, the Issuing Court has already confronted the venue question as it relates to the instant subpoena dispute, and has indicated its willingness to accept responsibility for deciding the subpoena matter, both directly (see Conditional Denial Order at 3 (stating that it would be "inclined" to rule on the subpoena issue if Respondent consented to its exercise of authority) ), and as a transferee (see id. at 3 n.3 ("declin[ing] to speculate" whether this Court would find exceptional circumstances warranting transfer of the subpoena dispute back to that court (internal quotation marks and citation omitted) ) ).